b) Failing to relieve her from all of her duties during that time;
c) Failing to allow her to choose when to take the leave;
d) Failing to stop her clock during her personal leave at Rice;
e) Failing to provide her a mentor;
f) Denying her CFS status although her publications met the written CFS policy of the department;
g) Counting the time Dr. Rowley should have been on parental leave during her CFS review;
h) Counting time when she was not on the CFS clock, when she was in a different position and when she was on personal leave against her during her CFS review;
*1329 i) Removing her from her position and placing her on temporary contracts during the consideration of her CFS appeal;
j) Denying Dr. Rowley a tenured professor position; and
k) Terminating her employment.
(Compl. ¶ 109.)
Dr. Rowley filed her Complaint on May 1, 2018. May 1, 2012, is the last date on which any of her contract-based claims must have accrued to be timely. BYU argues that four of her claims, sub-paragraphs (a), (b), (c), and (e), occurred before the statutory cut-off.
Dr. Rowley does not argue otherwise. She concedes that she cannot collect damages for those alleged breaches, but included them "to show a pattern of breaches and illustrate how they lead directly to, indeed caused, the later breaches of contract-the denial of tenure and termination of her employment." (Pl.'s Opp. to Mot. to Dismiss ("Opp.") at 16, ECF No. 14.) The court agrees with the parties. While sub-paragraphs (a), (b), (c), and (e) may lend context to timely contract claims, they fall outside the six-year limitation period and must be dismissed as stand-alone causes of action.
II. FMLA Claims Against All Defendants
The FMLA contains two limitations provisions-a general two-year limitation and a three-year limitation for willful violations of the Act. 29 U.S.C. § 2617(c)(1)-(2). Both limitation periods begin to run on "the date of the last event constituting the alleged violation for which the action is brought." Id.
Dr. Rowley pleads her FMLA retaliation claim much as she pleads her contract claims, asserting causes of action based on a series of allegedly retaliatory acts:
Defendants unlawfully retaliated against Dr. Rowley both for exercising or attempting to exercise her FMLA rights and for participating in the internal investigation by, including but not limited to, committing the following acts:
a) Refusing to grant her a one-year extension on her CFS clock and a full semester in which she would be relieved of all duties, not just teaching, as provided for in the policy;
b) Creating a contentious work environment;
c) Criticizing Dr. Rowley behind her back with senior faculty, one of whom became department chair;
d) Failing to cooperate with Dr. Rowley in coordinating a second year at Rice;
e) Failing to hold meetings with Dr. Rowley while on leave;
f) Failing to provide Dr. Rowley a mentor;
g) Apportioning Dr. Rowley less favorable class schedules;
h) Counting the time Dr. Rowley should have been on FMLA leave during her CFS review;
i) Counting time when she was not on the CFS clock, when she was in a different position and when she was on personal leave, against her during her CFS review;
j) Imposing disparate standards for tenure that only applied to Dr. Rowley;
k) Removing her from her position and placing her on temporary contracts during the consideration of her CFS appeal in violation of policy;
l) Denying Dr. Rowley a tenured professor position; and *1330 m) Terminating her employment.
(Compl. ¶ 123.)
The Defendants moves to dismiss sub-paragraphs (a) through (k) as untimely under the FMLA's three-year limitations provision.[3] Each of these events occurred before May 1, 2015.
Unlike her contract claims, Dr. Rowley does not concede that the events at issue are untimely. Rather, she argues that "the actions set forth in the Complaint are not isolated events, but rather part of a comprehensive pattern, culminating in the final event-the denial of tenure and termination of Dr. Rowley's employment." (Opp. at 7-8.) These, she argues, were the "last event" of retaliation for the purposes of the FMLA's statute of limitations.
Dr. Rowley implies a "continuing violation" theory that does have a place in employment law. The Supreme Court validated the continuing violation doctrine for hostile work environment claims brought under Title VII. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Title VII requires that claims be brought either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' " the Court held that if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117, 122 S.Ct. 2061.
The Tenth Circuit has not decided whether the continuing violation doctrine applies to FMLA claims. See Packard v. Cont'l Airlines, Inc., 24 F. App'x 960, 962 (10th Cir. 2001). But other circuits have rejected its application. In Barrett v. Illinois Department of Corrections, 803 F.3d 893 (7th Cir. 2015), the plaintiff, a corrections officer, was fired from her job in 2010 because she had taken twelve unexcused absences, one over the maximum number allowed by company policy. She filed suit in 2012, alleging that three of her unauthorized absences-one in 2003, one in 2004, and one in 2005-were protected under the FMLA and should have been authorized. The Seventh Circuit held that her FMLA claim of interference was time barred, even though the resulting adverse employment action (her termination) occurred within two years of her suit. Her employer's refusal to authorize the absences were " 'discrete acts'-independently actionable violations of the FMLA-and each one triggered its own limitations clock." Id. at 899.
Dr. Rowley argues that Barrett involves claims of interference with FMLA rights, not retaliation, and is not binding authority. She cites instead to McCully v. American Airlines, Inc., 695 F.Supp.2d 1225 (N.D. Okla. 2010), in which the plaintiff, who used FMLA leave for cancer treatment, alleged that her employer retaliated against her in part by failing to return her to an equivalent position upon her return, and then by ultimately firing her. The defendant, her employer, argued that its failure to return claim fell outside the FMLA's limitation period.
The court, distinguishing interference claims from retaliation claims, decided it "more appropriate to treat the failure to return claim as part of an alleged ongoing pattern of retaliation." Id. at 1251. "Because *1331 the last act constituting the alleged retaliation (McCully's termination) occurred within the two-year limitations period," the court determined the earlier and otherwise-untimely retaliation claim based on the position change to be actionable. Id.
This court finds Barrett the better-reasoned case. While Barrett did not involve claims of retaliation, Dr. Rowley has pled a series of discrete retaliatory acts that, for statute of limitations purposes, can be analyzed in the same manner as discrete acts of interference. Those events which culminated before May 1, 2015 are time-barred.
Title VII decisions are instructive when analyzing FMLA claims, see Packard, 24 F. App'x at 962, and support the approach in Barrett. The Tenth Circuit distinguishes hostile work environment claims, which do support a continuing violation theory, from "discrete acts of discrimination or retaliation, [for which] the application of Title VII's limitations period is straightforward." Hansen v. SkyWest Airlines, 844 F.3d 914, 923 (10th Cir. 2016) (emphasis added). And the Supreme Court has emphasized that Title VII claims accrue at the time the violative acts occurred, "not upon the time at which the consequences of the acts became most painful." Delaware State Coll. v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (internal quotation omitted). Accordingly, sub-paragraphs (a) though (k),[4] which occurred outside the FMLA's three-year limitation period, are dismissed as actionable claims.[5]
III. FMLA Claims Against Dr. Forste and Dr. Jacobson Individually
Dr. Forste and Dr. Jacobson ask the court to dismiss the FMLA claims against them individually on two grounds. First, they argue that any claims against them as individuals are time barred. Alternatively, both argue that they do not qualify as "employers" under the FMLA.
The Tenth Circuit has not decided whether individuals may be held liable under the FMLA. But the plain language of the statute indicates as much, defining an "employer" to include "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Likewise, FMLA regulations provide that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA. 29 C.F.R. § 825.104(d). District courts within the Tenth Circuit, including the District of Utah, have found that individuals may be held liable under the FMLA. See, e.g., Solis v. Ronin Risk USA, LLC, No. 2:08-CV-701 TS, 2010 WL 1253978, at *2 (D. Utah Mar. 24, 2010) ; Cordova v. New Mexico, 283 F.Supp.3d 1028, 1037 (D.N.M. 2017). Based on the language of the statute, this court likewise finds that the FMLA can impose liability on individual defendants.
But courts use different tests to determine whether an individual is an employer. In this district, for instance, Judge Stewart used the "control" test, which asks *1332 " 'whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.' " Pedersen v. W. Petroleum, Inc., No. 2:07-CV-997 TS, 2008 WL 977370, at *3 (D. Utah Apr. 9, 2008) (quoting Oby v. Baton Rouge Marriott, 329 F.Supp.2d 772, 788 (M.D. La. 2004) ). Judge Browning, in the District of New Mexico, borrowed the "economic realities" test used to determine whether an individual is an "employer" under the Fair Labor Standards Act. See Saavedra v. Lowe's Home Centers, Inc., 748 F.Supp.2d 1273, 1284-87 (D.N.M. 2010). The four-factor test considers "(i) whether the alleged employer has the power to hire and fire employees; (ii) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (iii) whether the alleged employer determines the rate and method of payment; and (iv) whether the alleged employer maintains employment records. Id. at 1292 (citing Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436, 1440 (10th Cir. 1998) )
At the motion to dismiss stage, a plaintiff "is not required to specifically allege all facts relevant to the individual defendants' authority, especially when the factual record has not yet been developed through discovery." Cordova, 283 F.Supp.3d at 1040. Instead-and regardless of the test used-a plaintiff need only plead that the individual defendants " 'had substantial control over the aspects of employment alleged to have been violated.' " Id. (quoting Smith v. Westchester Cnty., 769 F.Supp.2d 448, 476 (S.D.N.Y. 2011) ); see also Pedersen, 2008 WL 977370, at *3 (denying a motion to dismiss claims against an individual defendant when the plaintiff "has sufficiently alleged" that the individual defendant "had the ability to control whether Plaintiff could take a leave of absence or return to his position"); Saavedra, 748 F.Supp.2d at 1295 (denying a motion to dismiss where the plaintiffs "alleged specific facts" regarding the individual defendant's control over an employee's leave and the ability to fire the employee, and further noting that plaintiffs need not plead every element of the economic-reality test).
Dr. Rowley has alleged that Dr. Forste held a supervisory role as department chair and, in that position, exercised control over the timing and duration of Dr. Rowley's parental leave and committed retaliatory acts. But Dr. Forste left her supervisory position "[i]n or around April 2012," eight years before Dr. Rowley filed this case. (Compl. ¶ 66.) As discussed above, the retaliatory acts that occurred when Dr. Forste supervised Dr. Rowley are time-barred. Because Dr. Forste held no supervisory role during the later events, the remaining FMLA claims against her individually are dismissed.
Dr. Jacobson, however, became department chair (and so assumed a supervisory role over Dr. Rowley) in January of 2013. He apparently held that position when Dr. Rowley was denied tenure. And Dr. Rowley has alleged sufficient facts showing that Dr. Jacobson exercised control over her advancement through the tenure-approval process. For these reasons, the remaining FMLA claims against him individually are not dismissed.
ORDER
For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 3) is GRANTED IN PART and DENIED IN PART as follows:
1. Dr. Rowley's claims for breach of contract and breach of covenant of good faith and fair dealing based on sub-paragraphs 109(a), (b), (c), and (e) of the Complaint are DISMISSED WITH PREJUDICE;
*1333 2. Dr. Rowley's FMLA retaliation claims against BYU, Dr. Forste, and Dr. Jacobson based on sub-paragraphs 123(a) through (k) of the Complaint are DISMISSED WITH PREJUDICE; and
3. Dr. Rowley's remaining FMLA retaliation claims against Dr. Forste are DISMISSED WITH PREJUDICE.
SO ORDERED this 12th day of March, 2019.

For the purposes of its Motion only, the Defendants have assumed that the three-year limitation applies.

Though Dr. Rowley claims that the Defendants violated the FMLA in part by "[c]reating a contentious work environment," (Compl. ¶ 123(b) ), she has not alleged any specific retaliatory events occurring after May 1, 2015 to support that claim in particular.

While these allegedly retaliatory acts are not actionable, Dr. Rowley might be able to present them to establish her prima facie case of retaliation based on the remaining, actionable events. See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).